1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HENRY B.,

                    Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

Case No. 3:19-cv-05869-TLF

ORDER REVERSING AND
REMANDING FOR AWARD OF
BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his

application for disability insurance and supplemental security income (SSI) benefits.

The parties have consented to have this matter heard by the undersigned

Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule

MJR 13.

## I.     ISSUES FOR REVIEW

1. Whether the ALJ properly evaluated the medical evidence;
2. Whether the ALJ properly evaluated plaintiff's testimony;
3. Whether the ALJ properly assessed plaintiff's residual functional capacity (RFC); and
4. Whether the ALJ erred at step five of the evaluation process.

## II.     DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine if

a claimant is disabled. 20 C.F.R. § 416.920. The ALJ assesses the claimant's RFC to

determine, at step four, whether the plaintiff can perform past relevant work, and if necessary, at step five to determine whether the plaintiff can adjust to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The ALJ has the burden of proof at step five to show that a significant number of jobs that the claimant can perform exist in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 416.920(e).

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla," of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court considers in its review only the reasons the ALJ identified and may not affirm for a different reason. *Id.* at 1010. Furthermore, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citations omitted).

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.,* 533

F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss *all* evidence presented". *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*

The ALJ must consider medical evidence in assessing the RFC, and cannot then discredit such evidence because it is inconsistent with that RFC. *See Laborin v. Berryhill*, 867 F.3d 1151, 1153-54 (9th Cir. 2017). The Ninth Circuit has held that if an ALJ does this, the ALJ thereby "indicates that he or she did not properly 'incorporate a claimant's testimony regarding subjective symptoms and pain into the RFC finding, as [he or she] is required to do.' "*Laborin,* 867 F.3d at 1154 (citing *Trevizo*, 862 F.3d at 1000 n.6 and *Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015) (holding that this boilerplate language conflicts with the regulations and rulings)). "This practice 'inverts the responsibility of an ALJ, which is first to determine the medical impairments of a claimant based on the record and the claimant's credible symptom testimony and only *then* to determine the claimant's RFC.'" *Laborin,* 867 F.3d at 1154 (quoting *Trevizo*, 862 F.3d at 1000 n.6.) (emphasis original).

A.  Background

Plaintiff filed an application for Supplemental Security Income (SSI) disability benefits in September 2010, alleging that he has been disabled since June 10, 2009. AR 25, 204-07. After a hearing on March 2, 2012, ALJ Michael Gilbert determined that plaintiff was not disabled. AR 41-90. Plaintiff brought a civil action, and on December 22, 2014, this Court remanded plaintiff's claim for a new hearing. AR 678-88. On June

1   3, 2017, ALJ Gilbert again decided that plaintiff was not disabled. AR 519-59. Plaintiff

2   initiated another civil action, and this Court again remanded plaintiff's claim for a new

3   hearing. AR 1819-40. On March 14, 2019, a hearing was held before ALJ Joanne

4   Dantonio ("the ALJ"). AR 1690-1729. On May 17, 2019, the ALJ decided that plaintiff

5   has been disabled since December 19, 2017, but he was not disabled prior to that date.

6   AR 1730-77. Plaintiff seeks review of the ALJ's May 17, 2019 decision; this is the third

7   time this Court has reviewed plaintiff's case.

8

9          B.  Law of the Case

10          The law of the case doctrine generally prohibits a court from considering an issue

11   that has already been decided by that same court or a higher court in the same case.

12   *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) (citations omitted). The law of the

13   case doctrine "is concerned primarily with efficiency, and should not be applied when

14   the evidence on remand is substantially different, when the controlling law has changed,

15   or when applying the doctrine would be unjust." *Id.*

16          Here, plaintiff asks the Court to review the ALJ's assessment of the opinions of

17   Ms. Phillips, Dr. Manista, Ms. Fadele, Dr. Goudey, Mr. Norman, Dr. Turner, and Dr.

18   Schmitter. Plaintiff asserts that on remand ALJ Dantonio was not entitled to adopt ALJ

19   Gilbert's analysis of these opinions, even though the District Court had previously found

20   no error in that analysis. Plaintiff argues that the District Court's conclusion was clearly

21   erroneous and not based on substantial evidence.

22          Between ALJ Gilbert's June 3, 2017 decision, and ALJ Dantonio's decision

23   issued on May 17, 2019, the record expanded to include physical and occupational

24

25

ORDER REVERSING AND REMANDING FOR AWARD
OF BENEFITS - 4

1    treatment from January 18, 2017 to March 8, 2017 (AR 2052-2069); treatment records

2    from plaintiff's mental health care providers from September 1, 2016 to October 3, 2017

3    (AR 2070-2129); progress notes by the same from February 23, 2017 to October 12,

4    2017 (AR 2130-2188), and three consultative examination reports conducted in 2018 on

5    January 6 (AR 2189-2194), 8 (AR 2195), and 19 (AR 2196-2200).

6        ***Ms. Phillips.*** The ALJ did not cite to this new evidence when adopting ALJ

7    Gilbert's analysis of Ms. Phillips. AR 1759, citing 477-78. The District Court previously

8    held that Ms. Phillips' opinion was properly evaluated by the ALJ, because treatment

9    notes did not support Ms. Phillips' opinion. AR 1861. Plaintiff does not indicate, nor does

10   the Court find, that any of the new evidence would have substantially changed the

11   record before ALJ Dantonio. *See* Dkt. 15, at 2. Plaintiff instead asserts the District Court

12   in its previous opinion failed to recognize ALJ's Gilbert's error in finding that Ms.

13   Phillips's opinion did not identify objective evidence to support her opinion. *Id.*, citing AR

14   1834-36. None of the new evidence relates to evidence Ms. Phillips had included in in

15   her opinion. According to the law of the case, the ALJ did not err by adopting ALJ's

16   Gilbert's 2017 analysis of Ms. Phillips's opinion, and the Court declines to revisit this

17   issue.

18        ***Dr. Manista.*** In 2018, the District Court previously found that ALJ Gilbert had not

19   erred by discounting the portion of Dr. Manista's 2010 opinion recommending surgery,

20   and ALJ Dantonio adopted ALJ Gilbert's analysis. AR 1829; AR 1758-59. Plaintiff

21   argues that because plaintiff eventually underwent surgery in 2015 (AR 1150-1151), the

22   District Court's analysis was clearly erroneous. Dkt. 15, at 5. Plaintiff's 2015 operation

23   was in the record before ALJ Gilbert in 2017, and it was discussed. AR 541. ALJ

24

25

ORDER REVERSING AND REMANDING FOR AWARD
OF BENEFITS - 5

Dantonio repeated this discussion of the surgery in her opinion. AR 1754. The new evidence before ALJ Dantonio is neither relevant to nor substantially changes the evidence regarding Dr. Manista's opinion on surgery given in 2010. AR 543; AR 1758-59; *see* AR 2052-2200. Under the law of the case doctrine, the Court declines to revisit the issue of Dr. Manista's opinion on surgery; the Court likewise declines to examine the Court's 2019 ruling for error. ALJ Dantonio did not err by adopting ALJ Gilbert's analysis.

**Ms. Fadele**. ALJ Gilbert previously discounted Ms. Fadele's opinion as inconsistent with treatment notes from corresponding examinations, and the District Court affirmed this analysis. AR 544; AR 1834-36. ALJ Dantonio adopted ALJ Gilbert's analysis. AR 1758-59. ALJ Dantonio did not cite to new evidence when adopting ALJ Gilbert's analysis, but none of the new evidence substantially changed the record on inconsistent examination notes contemporaneous with Ms. Fadele's opinion. *See* AR 2052-2200 (subsequent treatment and other physicians' examination of plaintiff irrelevant). As such, law of the case applies, and the Court declines to review the issue concerning Ms. Fadele's opinion.

**Dr. Turner**. The District Court held that ALJ Gilbert had provided a specific, legitimate reasons to discount Dr. Turner's opinion, because the ALJ had properly noted that Dr. Turner had not resolved conflicting notes regarding plaintiff's abilities in his opinion. AR 1830, citing AR 544-45. ALJ Dantonio repeated this analysis in her opinion, noting that Dr. Turner had not explained the conflict between a November 9, 2010 examination observing plaintiff's limited mobility and a December 3, 2010 exam finding normal strength and mobility. AR 1759-60. Plaintiff argues that Dr. Turner's opinion was

supported by the evidence available to Dr. Turner's review of plaintiff's medical records; this argument fails. Dkt. 15, at 7-8. None of the new evidence before ALJ Dantonio was relevant to which evidence was before Dr. Turner, and which conflicts Dr. Turner should have resolved, when Dr. Turner gave his opinion. *See* AR 1759-60; 2189-2200 (examinations of the record by other physicians have no bearing on Dr. Turner's review). Accordingly, law of the case applies, and the Court declines to review the issue concerning Dr. Turner. ALJ Dantonio did not err by adopting ALJ Gilbert's analysis.

*Dr. Schmitter*. In 2018, the District Court held that the ALJ had not erred when the ALJ decided to give significant weight to Dr. Schmitter's opinion. AR 1832 (citing AR AR 530-42). The District Court found the medical record could support either outcome, such that the ALJ was entitled to resolve the ambiguity when deciding how much weight to give Dr. Schmitter's opinion. *Id.* (citing *Matney v. Sullivan*, 981 F.2d 1016,1019 (9th Cir. 1992)).

Plaintiff asserts that Dr. Schmitter did not carefully review the medical evidence and made factual errors in his opinion. Dkt. 15, at 12-13. Yet factual errors on Dr. Schmitter's part are insufficient to invalidate the ALJ's assessment of Dr. Schmitter's opinion's consistency with the rest of the medical evidence. "The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Plaintiff has not shown that the evidence was substantially different on remand to require a re-assessment of Dr. Schmitter's opinion. Accordingly, law of the case applies, and the Court declines to review the issue concerning Dr. Schmitter's opinion. ALJ Dantonio did not err in adopting ALJ Gilbert's reasoning giving Dr. Schmitter's opinion significant weight.

1

2
3
4
5
6
7
8
9
10
11
12
13

14
15
16
17
18
19
20
21

22
23
24
25

C.  Whether the ALJ erred in assessing treating physician testimony

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). When a treating or examining physician's opinion is contradicted, an ALJ must provide specific and legitimate reasons for rejecting it. *Id.* In either case, substantial evidence must support the ALJ's findings. *Id.* Under Ninth Circuit law, opinions from non-examining medical sources that contradict a treating physician's opinion will trigger the "specific and legitimate reasons" standard of review. *See, e.g.*, *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017) (requiring only specific and legitimate reasons where treating doctor's opinion was "contradicted by the findings of Dr. Rowse and Dr. Blando, the non-examining doctors from the state agency, and, to some extent, the opinion of Dr. Ruggeri, the hand specialist").

"Determining whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount the opinions of [treating or examining doctors] falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of internally inconsistent medical opinion). An ALJ need not accept a medical opinion that is brief and conclusory when the ALJ faces conflicting evidence regarding the claimant's condition. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Even where a treating physician's opinion is brief and conclusory, an ALJ must consider its context in the record—especially the physician's treatment notes. *See*

1   *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (holding ALJ erred in finding

2   treating opinion "conclusory" and supported by "little explanation," where ALJ

3   "overlook[ed] nearly a dozen [treatment] reports related to head, neck, and back pain");

4   *Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017) (finding ALJ erred in rejecting

5   treating physician's opinion as supported by "little explanation," where record included

6   treatment notes supporting the opined limitations).

7         ***Dr. Cheng***. Dr. Cheng conducted a mental evaluation of plaintiff on August 24,

8   2014. AR 1467-71. Dr. Cheng diagnosed plaintiff with recurrent major depressive

9   disorder and a rule out diagnosis of bipolar disorder. AR 1470. He opined that plaintiff

10  possessed the ability to reason and understand, that plaintiff appeared to be able to

11  follow and understand simple directions and instructions, and that plaintiff could perform

12  simple tasks. AR 1470. Dr. Cheng further opined that plaintiff had (1) impaired short-

13  term memory, (2) difficulty maintaining attention and concentration for tasks requiring

14  physical involvement, (3) possible difficulty learning new tasks and performing complex

15  tasks independently, (4) somewhat impaired judgment, (5) chronic difficulty socializing

16  and interacting with others, and (6) difficulty dealing with stress and adopting to change.

17  AR 1470-71.

18        In the District Court's previous decision in 2018, the Court found that ALJ Gilbert

19  had erred when he accorded some weight only to the portions of Dr. Cheng's opinion

20  supporting plaintiff's ability to perform work tasks and less weight to the Dr. Cheng's

21  opinion on plaintiff's mental limitations. AR 1823. The District Court found that ALJ

22  Gilbert had "failed to identify any particular evidence in the record and explain how it

23  undermined Dr. Cheng's findings." AR 1824 (citing AR 545; *Embrey v. Bowen*, 849 F.2d

24

25

1  418, 421 (9th Cir. 1988) (the ALJ must provide explanation of any contrary objective

2  findings)). The District Court also found the ALJ erred by failing to explain why he

3  weighted some "routinely normal objective mental status examinations" over Dr.

4  Cheng's mental status examination. AR 1825 (citing *Garrison v. Colvin*, 759 F.3d 995,

5  1012-13) (it is error to assign one medical opinion greater weight than another without

6  explanation).

7        ALJ Dantonio came to the same conclusion as ALJ Gilbert, reasoning that (1)

8  most exam findings show plaintiff's mood and affect as appropriate and normal, (2) in

9  other exams, plaintiff participated actively and responded to examiners in a friendly

10  manner, (3) plaintiff's activity level had increased to the point of feeling good and

11  enjoying being with friends, and (4) plaintiff has demonstrated higher ability to function,

12  such as caring for his daughter, doing light housework, and spending time with others.

13  AR 1760.

14        Although ALJ Dantonio cited to "most" other mental status examinations, she did

15  not explain why these other mental status examinations should be assigned greater

16  weight than Dr. Cheng's. AR 1760. This is the same error previously identified by the

17  District Court. AR 1825. The ALJ must not only cite to conflicting evidence, but must

18  provide reasoning for why the ALJ resolves the conflict in favor of one outcome over

19  another. *See Embrey v. Bowen*, 849 F.2d at 421.

20        To discount Dr. Cheng's opinion on plaintiff's inability to interact with others, the

21  ALJ relied on a single 2018 report of improvement of plaintiff's symptoms of depression.

22  AR 1760 (citing AR 2181). The ALJ did not address reports throughout the record of

23  plaintiff's difficulty socializing during the relevant period between 2009 and 2017. *See,*

24

25

*e.g.*, AR 510, 1001, 1205. It is error for the ALJ to cherry-pick a single instance from the record of the waning of plaintiff's mental-health symptoms to support a conclusion of higher functioning. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ also relies on plaintiff's status reports to "demonstrate" his ability to function, but the first report indicates that his "9 year old [] helps [him] with everything"; he only leaves the house to pick his child up from school; he slowly performs his chores at night; and although he enjoys the company of others, his pain prevents from him doing so. AR 1760; *compare* AR 228-232. The second report provides little better support for the ALJ's assertion, as plaintiff reported three years later that his daughter (then twelve) continued to do housework for plaintiff and "help him with everything," and that plaintiff's socializing was limited to visits at his home with friends. AR 960, 963-964.

The ALJ erred by failing to provide specific, legitimate reasons to discount Dr. Cheng's opinion on plaintiff's mental health limitations. Because Dr. Cheng's opinion suggested greater limitations on concentration, leaning new tasks, and socializing than the ALJ supplied in plaintiff's RFC, the ultimate disability determination may have changed if the ALJ had properly considered Dr. Cheng's opinion. Accordingly, the ALJ's error was harmful.

### D.  Whether the ALJ erred in assessing other opinion evidence

If the plaintiff was treated by a person other than an accepted medical source, the standard of review is different. *See e.g., Turner v. Commissioner of Social Sec.,* 613 F.3d 1217, 1224 (9th Cir. 2010) (an ALJ may disregard opinion evidence provided by "other sources," if the ALJ "gives reasons germane to each witness for doing so")

1   (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); 20 C.F.R. § 404.1513(d)

2   (effective Sep. 3, 2013 to Mar. 26, 2017 ) (nurse practitioners are considered other

3   medical sources); 20 C.F.R. § 404.1513(d) (chiropractors are considered other medical

4   sources).

5       ***Mr. Calvert***. Mr. Calvert is a physician's assistant (PA) at Sea Mar Aberdeen

6   Medical Pain Clinic who treated plaintiff in 2013 and 2014. *See,* e.g., AR 1117-18, 1119-

7   20, 1123-24 (treatment notes). As a PA, Mr. Calvert is not an acceptable medical

8   source of opinion evidence. *See* 20 C.F.R. § 404.1513(d). Mr. Calvert opined on August

9   24, 2014 that due to plaintiff's lower back pain, plaintiff could not lift heavy loads,

10  needed time to change position between sitting and standing, and was limited to 1-10

11  hours of sedentary work a week. AR 1024-1027.

12      In its 2018 decision, the District Court previously found that the ALJ had erred by

13  selectively relying on the record and directed the ALJ to reassess Mr. Calvert's opinion

14  on remand. AR 1834. ALJ Gilbert had rejected Mr. Calvert's opinion based on a

15  treatment note from April 22, 2014 showing normal musculoskeletal findings. AR 1803.

16  The District Court found that the ALJ had failed to explain why he selected a single

17  treatment note from Mr. Calvert to justify discounting his opinion, in light of Mr. Calvert's

18  multiple other treatment notes tending to support his opinion. AR 1833-34 (citing AR

19  1123, 1128, 1129; *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (inconsistency

20  derived from overlooking relevant treatment notes is not a reason supported by

21  substantial evidence); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F. 3d 1090, 1103

22  (9th Cir. 2014) (citation omitted) ("the ALJ must provide some reasoning in order for us

23

24

25

1    to meaningfully determine whether the ALJ's conclusions were supported by substantial

2    evidence").

3           In ALJ Dantonio's current decision, the ALJ again noted that Mr. Calvert's April

4    22, 2014 treatment note did not support his opinion and did not explain the other,

5    supportive notes from Sea Mar. AR 1752, 1759. The ALJ also provided a host of other

6    citations to the record and reasoned that Mr. Calvert's opinion was (1) inconsistent with

7    other objective medical evidence in the record, and (2) inconsistent with later

8    consultative exam findings by Dr. Sethi, and (3) inconsistent with Dr. Manista's and Dr.

9    Schmitter's opinions.

10          The ALJ specifically relied on treatment notes documenting plaintiff's follow-up

11   care after his spinal surgeries and various examples of normal musculoskeletal findings

12   and observations of plaintiff changing position, but the ALJ failed to recognize that the

13   cited treatment notes endorsed plaintiff's symptoms of back pain (and on two occasions,

14   did not include a musculoskeletal examination). AR 1759; AR 1560-1568 (plaintiff's

15   follow-up care recorded plaintiff's continued pain requiring further intervention, despite

16   some improvement after surgery); AR 1130 (tenderness and pain found on spinal

17   examination), 1300 (tenderness and pain found on spinal examination); AR 1658 (back

18   pain not addressed during an appointment to treat a cough); AR 1213 (plaintiff's

19   observed mental distress suspected to interact with biomedical factors to produce his

20   pain). These treatment notes do not tend to undermine Mr. Calvert's opinion.

21          Finally, the ALJ asserted that Drs. Sethi, Manista, and Schmitter had greater

22   access to plaintiff's records, but did not explain how Mr. Calvert's opinion was

23   inconsistent with the other doctors' opinions, which is error. AR 1759. Not only did the

24

25

ORDER REVERSING AND REMANDING FOR AWARD
OF BENEFITS - 13

1 ALJ repeat the same error made by ALJ Gilbert identified by the District Court, the ALJ

2 failed to provide any other germane reasons to discount Mr. Calvert's opinion. This error

3 is not harmless – if the ALJ had properly considered Mr. Calvert's opinion, the RFC and

4 hypothetical question posed to the VE may have included additional limitations. *See*

5 *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

6       ***Dr. Goudey and Mr. Norman***. The Court previously found that although ALJ

7 Gilbert had not provided reasons for discounting the opinions of Dr. Goudey and Mr.

8 Norman, plaintiff's physical therapists, plaintiff had not shown that either opinion

9 constituted "significant probative evidence" requiring the ALJ to explain his rejection. AR

10 1837 (quoting *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)). The Court found

11 that plaintiff had not met his burden to demonstrate that any error regarding these other

12 source opinions would have been consequential to the RFC and step five determination

13 of disability. *Id.* (citing *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).

14       Here, plaintiff cites to these source's opinions on plaintiff's functional limitations,

15 and argues that if these opinions were credited, they would show that plaintiff was

16 limited to at most sedentary work. Dkt. 15, at 7.

17       In January and February 2016, Dr. Goudey treated plaintiff for his pain and

18 weakness in his trunk. AR 1163-1175. At the end of treatment, Dr. Goudey opined that

19 plaintiff had persistent functional limitations with changing and maintaining his body

20 position, including remaining seated and remaining standing, and limitations with

21 mobility, including negotiating obstacles. AR 1175.

22       On January 18, 2017, Mr. Norman conducted a physical therapy evaluation of

23 plaintiff. The treatment notes from that evaluation assessed plaintiff as having "pain . . .

24

25

ORDER REVERSING AND REMANDING FOR AWARD
OF BENEFITS - 14

1    [and] limitation in movement" and that "the pain is limiting his mobility overall, yet he

2    continues to be able to complete ADLs. . . he cannot hold any position including sitting

3    for more than an hour." AR 1626.

4          ALJ Dantonio mentioned plaintiff's physical therapy treatment by Dr. Goudey in

5    her decision, but she did not evaluate Dr. Goudey's opinion on plaintiff's functional

6    limitations. AR 1755. She did not discuss Mr. Norman's opinion at all. A medical opinion

7    from an "other" medical source, such as a physical therapist, must be considered. *See*

8    20 C.F.R. § 404.1513(d) (effective Sept. 3, 2013 to Mar. 26, 2017). Because these

9    sources opined that plaintiff had greater functional limitations than the ALJ included in

10    plaintiff's RFC, the ALJ was obligated to provide germane reasons for disregarding the

11    evidence. *Flores v. Shalala*, 49 F.3d 562, 571 (9th Cir. 1995) (the "ALJ's written

12    decision must state reasons for disregarding such evidence"); *Molina v. Astrue*, 674

13    F.3d 1104, 1111 (9th Cir. 2012) ("The ALJ may discount testimony from these 'other

14    sources' if the ALJ 'gives reasons germane to each witness. . .'").

15          The ALJ's failure to address these opinions is harmful error, because the RFC

16    assessed by the ALJ did not include any limitations on plaintiff's ability to stand, sit, or

17    walk. These exertional limitations, if present, may erode the plaintiff's occupational base

18    to sedentary or less-than-sedentary work. AR 1720-22 (vocational expert testimony);

19    s*ee* SSR 96-9p at *3, 1996 WL 374185.

20          ***Treatment notes***. Plaintiff further alleges that the ALJ erred in failing to consider

21    treatment notes tending to support plaintiff's claim for disability. Plaintiff provides a list of

22    medical diagnoses, physical examination notes, medication administration records, and

23

24

25

plaintiff's surgical history. Dkt. 15, at 10-11, citing to AR 348, 414, 393, 503, 510, 511, 513, 985, 1205, 1330, 1110, 1134, 1094, 1137, 1144-46, 1540-41, 1552, 1572, 1573.

Plaintiff alleges that the ALJ erred by "failing to acknowledge that this evidence is consistent with other medical opinions, and [that] it is also consistent with [plaintiff's] testimony." Dkt. 15, at 11. Yet plaintiff has not indicated that this "other medical evidence" constitutes opinion evidence which the ALJ would be obligated to consider. *See* 20 C.F.R. §404.1527 (evaluating opinion evidence for claims filed before March 27, 2017). The ALJ "need not discuss all evidence presented." *Vincent ex rel. Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984). Plaintiff has not identified how the ALJ's alleged failure to consider these records is consequential to the RFC and the ultimate disability determination. The Court finds that plaintiff has failed to show the ALJ erred with respect to these treatment notes. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only the error, but also that it affected his substantial rights.").


E.  Whether the ALJ erred in assessing plaintiff's testimony

Plaintiff alleges that the ALJ provided legally insufficient reasons to discount his subjective symptom testimony. Dkt. 15, at 13-17.

In weighing a plaintiff's testimony, an ALJ must use a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no

evidence of malingering, the second step allows the ALJ to reject the claimant's

testimony of the severity of symptoms if the ALJ can provide specific findings and clear

and convincing reasons for rejecting the claimant's testimony. *Id. See Verduzco v.*

*Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistent testimony about symptoms is a

clear and convincing reason).

Here, the ALJ reasoned that (1) plaintiff's allegations on pain and mental

impairments are inconsistent with objective medical evidence; (2) plaintiff's pain

improved with treatment, (3) plaintiff's preference for a narcotic pain management

regime and avoidance of non-narcotic painkillers and anti-depressants indicates that his

pain was adequately controlled and his mental impairments were not as severe as

alleged, and (4) plaintiff's allegations concerning his impairments are inconsistent with

his self-reported activities of daily living. AR 1757.

With respect to the ALJ's first reason, an inconsistency with the objective

evidence may serve as a clear and convincing reason for discounting a claimant's

testimony. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297

(9th Cir. 1998). But an ALJ may not reject a claimant's subjective symptom testimony

"solely because the degree of pain alleged is not supported by objective medical

evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (internal quotation

marks omitted, and emphasis added); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir.

1995) (applying rule to subjective complaints other than pain).

Here, plaintiff testified at his 2012 hearing that his pain extended from his back

and down his left leg, causing jabbing pain and numbness in the limb. He testified that

the pain prevented him from continuously sitting longer than a half hour, standing more

than 5 minutes, and walking more than 10 minutes. AR 62, 65-66. In the hearing in 2019, plaintiff stated that after he underwent a microdiscectomy in 2015, the numbness in his left leg resolved, but he began to experience increased severe pain in the leg when sitting or standing idly. AR 1696. He stated that whether sitting or standing, his pain caused him to move or shift position within a couple minutes, and that he could walk about five or ten minutes before needing to rest. AR 1697-99; *see also* 1901 (similar testimony at 2017 hearing). He testified that he could tolerate sitting longer when he leaned his weight away from his left leg. AR 1700; AR 1901.  With respect to his mental impairments, plaintiff testified that he had struggled with energy and motivation due to depression since the age of twelve, and that the depression had deepened since 2014. AR 1706 (in 2019); *see also* AR 1907 (in 2017, testified to years of counseling attended for "off and on" periods of dysfunction due to depression). He stated that he could not concentrate more than a "little bit." AR 1706.

The ALJ found that plaintiff's allegations concerning his pain were inconsistent with plaintiff's ability to walk normally without an assistive device. AR 1757, citing multiple observations of a normal gait, e.g., AR 447, AR 450 (same appointment as AR 447), AR 457, AR 1130, AR 1134, AR 1304, AR 1481, AR 1659. This is not substantial evidence of inconsistency, because plaintiff did not allege any limitations in his posture while walking or a need for an assistive device, only that walking for longer periods caused pain. *See* AR 65-66, 1697-91. Several of the notes cited by the ALJ contained observations tending to support plaintiff's testimony regarding his primary complaint of left-sided pain in his back and leg. *See* AR 447 (plaintiff leaning to the right in

1    discomfort); AR 1134 (numbness reported on the left side); AR 1304 (tenderness found

2    along spine); AR 1481 (left lumbar area tender on palpation).

3           Regarding plaintiff's mental impairments, the ALJ found that plaintiff's testimony

4    was inconsistent with observations of plaintiff's normal mental status while receiving

5    counseling for depression. AR 1757, citing AR 2134-36 (noting alert and oriented status,

6    normal speech, good eye contact, appropriate affect and euthymic mood). The ALJ's

7    finding of inconsistency is not supported by substantial evidence, as plaintiff's ability to

8    speak normally and behave in an appropriate manner during a therapy session is not

9    inconsistent with his testimony that depression limits his ability to concentrate and

10   reduces his motivation to care for himself or others, particularly since the instances cited

11   by the ALJ recorded plaintiff's treatment *while experiencing* an episode of depression.

12   *See* AR 1706, 1906; *compare* AR 2134-36 (treatment notes finding unresolved

13   "depressive and high anxiety symptoms"). The ALJ's findings of inconsistency with

14   objective medical evidence were therefore unsupported by substantial evidence.

15          As for the ALJ's second reason, a finding that a claimant's condition improved or

16   was controlled with treatment can serve as a clear and convincing reason for

17   discounting his testimony. *See* 20 C.F.R. § 404.1529(c)(3)(iv) (the effectiveness of

18   medication and treatment are relevant to the evaluation of a claimant's alleged

19   symptoms); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (evidence of

20   medical treatment successfully relieving symptoms can undermine a claim of disability).

21          Here, the ALJ found that plaintiff's treatment regime, including "narcotic pain

22   management, back brace, injection therapy, physical therapy, and microdisectomy," had

23   resulted in improvement and adequate management of plaintiff's pain. AR 1757, citing

24

25

1    392, 447, 451, 496, 506. The ALJ further reasoned that the plaintiff's eventual weaning

2    off narcotics suggested that plaintiff's pain was not severe. AR 1757, citing 1603

3    (plaintiff began tapering hydrocodone and refused to start gabapentin or psychotropics

4    due to fear of emotional side effects), 2101, 1584 (toward the end of tapering, plaintiff

5    started Lyrica, a non-narcotic pain medication).

6         Plaintiff contends that the ALJ's reasoning is not supported by substantial

7    evidence, as the ALJ failed to show that plaintiff had experienced sustained

8    improvement, but rather that his symptoms have waxed and waned over time. Dkt. 15,

9    at 14. Plaintiff also asserts that the ALJ failed to account for pain symptoms and

10   limitations he continued to experience even with opioid treatment. Dkt. 15, at 15.

11   Plaintiff objects to the ALJ's discounting his testimony regarding his concerns on side

12   effects, since he had testified to a history of adverse side effects from multiple anti-

13   depressants, but the record did not contain evidence of side effects from narcotic

14   medication or marijuana. *Id.* at 16, citing to 605-06, 628-29, 1110, 1468.

15        To the extent that the ALJ implies that plaintiff's back pain had improved over

16   time, this conclusion is not supported by substantial evidence. The ALJ primarily

17   referred to plaintiff's first year of treatment without considering subsequent records: for

18   example, the record cited by the ALJ establishes that plaintiff experienced temporary

19   pain relief following a first steroidal injection in 2010 (AR 392), but that he continued to

20   experience numbness on his affected side (AR 447, 451). These records indicate that

21   plaintiff's pain returned within a matter of weeks, prompting a second steroidal injection

22   that provided similarly temporary relief. AR 503. The ALJ also cited to plaintiff's report

23   that his back brace was comfortable on the day of its fitting in 2010 (AR 496), but this is

24

25

ORDER REVERSING AND REMANDING FOR AWARD
OF BENEFITS - 20

1    insufficient to support an inference of actual improvement in plaintiff's pain symptoms.

2    As for the ALJ's citation to plaintiff's 2010 physical therapy, plaintiff continued to report

3    unresolved pain and sought additional medical intervention – including two more rounds

4    of physical therapy in 2014 and 2017. AR 436-37, 505-06, 1626-1629, 2053-63. Finally,

5    the ALJ extrapolates from plaintiff's weaning off opioids that plaintiff's pain must have

6    been adequately controlled and finally improved. AR 1757. This conclusion is

7    unsupported by the record, as treatment notes make it clear that plaintiff's treatment

8    providers decided to wean plaintiff off hydrocodone to prevent the development of

9    chronic pain syndrome and drug dependence, and both plaintiff and his treating

10   physicians were seeking alternative medication to manage plaintiff's ongoing pain. AR

11   1567 (weaning begun in March 2016), 1561-64 (no overt drug-seeking behavior noted

12   during weaning process), 1584 (toward the end of tapering, plaintiff started Lyrica and

13   physical therapy), 2073 (plaintiff stopped using Lyrica due to ineffective relief and lack of

14   insurance coverage).

15        As for the ALJ's third reason, the ALJ relied on plaintiff's use of opioids to

16   discount plaintiff's pain allegations and his concern about the potential emotional side

17   effects of other medications, including anti-depressants. AR 1757. The ALJ also noted

18   that plaintiff willingly used marijuana. *Id.* The ALJ reasoned that since plaintiff willingly

19   used other drugs without concern for their possible side effects, plaintiff could not

20   honestly have been concerned enough about side effects to refuse anti-depressant

21   medication. *Id.* Accordingly, the ALJ found that plaintiff's reluctance to take various anti-

22   depressant medications was inconsistent with the alleged severity of his depression.

23

24

25

1    The ALJ also cast suspicion on plaintiff's preference for a narcotic pain

2    management regime, noting that plaintiff used only opioids for years to manage his

3    pain, rather than pursue surgical treatment or take alternative pain medication. The ALJ

4    noted that plaintiff had not quit smoking when advised by his treatment providers and

5    had not followed up with surgical treatment in 2011 and 2012 until "after his primary

6    care providers advised him that opioid therapy would stop." AR 1757, citing 1288, 1294.

7    The ALJ also indicated plaintiff's reluctance to use non-narcotic pain relievers such as

8    gabapentin. AR 1757, citing AR 1299.

9        An ALJ may infer that a claimant's condition is less disabling based on a failure

10   to seek treatment or follow a prescribed course of treatment. *Tommasetti v. Astrue*, 533

11   F.3d 1035, 1039 (9th Cir. 2008) (claimant found not disabled where he "did not seek an

12   aggressive treatment program and did not seek an alternative or more-tailored

13   treatment program after he stopped taking an effective medication due to mild side

14   effects"). Yet the ALJ should consider explanations or evidence in the record that

15   explains noncompliance before drawing inferences from a failure to seek treatment or

16   follow treatment recommendations. *See* SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL

17   5180304, at *9-10; *see also* Lockwood v. Comm'r Soc. Sec. Admin., 397 F. App'x 288,

18   290 (9th Cir. 2010).

19       Here, the ALJ also appears to suggest that plaintiff failed to seek treatment such

20   as surgery or alternative medications because he was seeking opioids instead. Drug-

21   seeking behavior is a clear and convincing reason to discount a claimant's credibility if

22   supported by substantial evidence. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th

23   Cir. 2001) (holding that drug-seeking behavior is evidence that undermines a claimant's

24

25

credibility). Yet ALJ did not cite to substantial evidence of drug-seeking behavior, leaving no reason to suppose that plaintiff's extended use of opioids showed a failure on plaintiff's part to seek more effective treatment. *See* AR 1757, citing 1584 (plaintiff avoided non-narcotic medication until agreeing to trial Lyrica approximately a month prior to being weaned off narcotics); *see also* AR 1561-64 (noted that no overt drug-seeking behavior observed during weaning process).

To begin with, the ALJ discussed how plaintiff's candidacy for spinal fusion surgery depended on his ability to quit smoking prior to an operation, but plaintiff neglected to pick up anti-smoking patches, did not quit smoking, and eventually failed to pursue a fusion from his orthopedic surgeon. AR 1757. Yet the ALJ did not accurately characterize the record by suggesting that plaintiff eventually sought surgical treatment only after his providers informed him that his opioid prescription would be discontinued. Rather, the record demonstrates that plaintiff remained disqualified from spinal fusion surgery so long as he had not quit smoking. AR 1397.

Here, where treatment notes repeatedly attributed plaintiff's failure to quit smoking to plaintiff's difficulties with substance addiction, the ALJ erred to have found plaintiff's smoking to be evidence of a failure to seek treatment. AR 1364, 1366, 1370, 1397. On the two cited occasions where plaintiff failed to make orthopedic appointments, the ALJ failed to consider the reasons provided within the cited treatment notes – that plaintiff found his transportation options too painful and lacked motivation to act while depressed. *See* AR 1288, 1294.

When plaintiff eventually underwent a microdisectomy in October 2015, the procedure did not have a non-smoking requirement. AR 1143, 1884. Prior to the

microdisectomy, plaintiff continued to express interest in surgical intervention, but found it too difficult to quit smoking. AR 1135, 1397, 1430-36, 1905-06. Plaintiff's physicians discussed weaning only after the microdisectomy was successfully performed, and plaintiff received opioid treatment both before and after the operation. *See, e.g.*, AR 1424 (opiates prescribed in 2014), 1155 (plaintiff found to be a good candidate for opioid treatment in August 2015), 1163 (in January 2016 follow-up to October 2015 surgery, pain clinic continued opioid prescription and planned a subsequent taper), AR 1567 (March 2016, opiates remained prescribed and weaning began).

With respect to the credibility of plaintiff's concern about emotional side effects from various medications, the ALJ was not entitled to presume that plaintiff's use of drugs such as opioids or marijuana was inconsistent with plaintiff's fear of side effects from what plaintiff called "psychotropic" medications. The ALJ is not permitted to rely on speculation that plaintiff was undeterred by hypothetical side effects from opioids or marijuana, where the record indicates that plaintiff had not complained of side effects from his opioid treatment and stopped using marijuana when plaintiff found that it too coincided with emotional side effects. AR 1413 (marijuana usage stopped after reporting anger and violent thoughts); *see Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (an ALJ's "concerns and speculation" regarding the effects of a claimant's substance abuse did not constitute substantial evidence). The ALJ stated that plaintiff avoided gabapentin when it was prescribed in 2016. AR 1750, citing 1212, *see* AR 1935 (at April 2017 hearing, plaintiff testified that he was afraid to try gabapentin). Yet the record indicates that plaintiff eventually tried the medication and discontinued its

use due to emotional side effects of anger. AR 2073 (in September 2017, plaintiff's chart was updated to reflect adverse side effects from gabapentin).

Accordingly, the ALJ failed to support his reasoning with substantial evidence of either drug-seeking behavior or a failure to diligently pursue treatment.

Regarding the ALJ's fourth reason, a claimant's participation in everyday activities indicating capacities that are transferable to a work setting may constitute a clear and convincing reason for discounting that claimant's testimony. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.1999). Yet disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), citing *Cooper v. Bowe*n, 815 F.2d 557, 561 (9th Cir.1987) (a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits).

Here, the ALJ cited counseling notes in which plaintiff reported that he had started to focus more on caring for his daughter, being active, going out "more often," and spending time with friends. AR 1757, citing 2181. The ALJ did not discuss how these activities showed skills transferrable to a work environment. The record shows that plaintiff made these reports in response to recommendations by his counselor to alleviate his social isolation, by working on his relationships with his daughter and friends. AR 2181 (plaintiff's counselor noted plaintiff's low self-esteem, limited emotional coping skills, and high isolation; plaintiff and counselor agreed to a mental health plan consisting of spending more quality time with his daughter and increasing other social interactions).

1    As discussed above in the ALJ's assessment of Dr. Cheng's opinion evidence,

2  the ALJ erred by cherry-picking examples of plaintiff's attempts to improve his quality of

3  life to support a conclusion that plaintiff had greater function than alleged. *Supra* Section

4  II.C; *see* AR 960 (plaintiff relied on his daughter to complete housework), 963-64

5  (plaintiff was uncomfortable socializing with many people). Plaintiff's ability to

6  occasionally engage in basic activities, such as light housework, caring for his daughter

7  at home, or seeing a couple friends, is not a clear and convincing reason for discounting

8  plaintiff's testimony concerning his pain and mental limitations. *See Diedrich v. Berryhill*,

9  874 F.3d 634, 643 (9th Cir. 2017) ("House chores, cooking simple meals, self-grooming,

10  paying bills, writing checks, and caring for a cat in one's own home, as well as

11  occasional shopping outside the home, are not similar to typical work responsibilities.").

12    Accordingly, the ALJ did not provide substantial evidence of clear and convincing

13  reasons to discount plaintiff's testimony. Furthermore, if the ALJ had not discounted

14  plaintiff's testimony regarding his pain and mental limitations, then the ALJ's RFC may

15  have included additional limitations on plaintiff's ability to walk, stand, and sit, as well as

16  plaintiff's ability to concentrate and stay on task.

17    At the hearing, the ALJ considered whether additional postural limitations, such

18  as those considered in the discounted medical opinion evidence, would have impacted

19  plaintiff's ability to perform the jobs offered by the vocational expert ("VE"), and the VE

20  testified that if plaintiff had needed to sit and stand at will, and had required 40 minutes

21  of additional break time, that plaintiff would have been limited to sedentary work. AR

22  1720-22. Furthermore, the VE testified that if plaintiff's mental limitations on socializing

23  prevented plaintiff from engaging normally in the job training process, it would render

24

25

1  plaintiff unemployable in a competitive work environment. AR 1724-26. Since plaintiff's

2  testimony would have changed the ultimate disability determination, this error was

3  harmful. *See Molina v. Astrue,* 674 F.3d 1104, 1115 (9th Cir. 2012).

4

5          F.   Whether the ALJ erred at step five of the evaluation process

6          Plaintiff argues that due to the errors the ALJ made assessing the medical

7  evidence and plaintiff's testimony, the ALJ erred in assessing the RFC and step five

8  findings. Dkt. 15, at 17-18. Because the Court has found that the ALJ harmfully erred

9  assessing the medical opinion testimony and plaintiff's testimony, the Court finds these

10  errors led to error in the RFC – because it is not a reliable measure of plaintiff's abilities

11  – and this also would lead to error at step five. *See Garrison v. Colvin,* 759 F.3d 995,

12  1011 (9th Cir. 2014) (the VE's testimony has no value unless it is based on a

13  hypothetical supported by medical evidence, and unless the assumptions in the

14  hypothetical are based on substantial evidence). Rather than remand for another

15  hearing for the ALJ to present more hypotheticals to a vocational expert, to determine

16  plaintiff's RFC, and to re-assess whether plaintiff would be able to work in any jobs that

17  are available, the Court remands for an award of benefits.

18          G.   Remand With Instructions for Award of Benefits

19          "'The decision whether to remand a case for additional evidence, or simply to

20  award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664,

21  682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If

22  an ALJ makes an error and the record is uncertain and ambiguous, the court should

23  remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045

24  (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy

25

ORDER REVERSING AND REMANDING FOR AWARD
OF BENEFITS - 27

1   the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d

2   at 668.

3          The Ninth Circuit has developed a three-step analysis for determining when to

4   remand for a direct award of benefits. Such remand is generally proper only where

5          "(1) the record has been fully developed and further administrative
           proceedings would serve no useful purpose; (2) the ALJ has failed to
6          provide legally sufficient reasons for rejecting evidence, whether claimant
           testimony or medical opinion; and (3) if the improperly discredited
7          evidence were credited as true, the ALJ would be required to find the
           claimant disabled on remand."

8   *Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir.

9   2014)).

10         The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is

11  satisfied, the district court still has discretion to remand for further proceedings or for

12  award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

13         The Court is mindful that plaintiff has had two previous remand hearings, and

14  simply providing another opportunity to assess improperly evaluated evidence, allowing

15  the ALJ to have a "mulligan", does not qualify as a remand for a "useful purpose" under

16  the first part of the credit as true analysis. *Garrison*, 759 F.3d at 1021-22, citing

17  *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to

18  decide the issue again would create an unfair 'heads we win; tails, let's play again'

19  system of disability benefits adjudication.). The medical record of plaintiff's treatment

20  history between 2009 and 2017 has been fully developed, and there is no ambiguity in

21  the record regarding plaintiff's treatment history – any additional information provided by

22  further administrative proceedings would not be required. *See Smolen v. Chater*, 80

23  F.3d 1273, 1292 (9th Cir. 1996).

24

25

ORDER REVERSING AND REMANDING FOR AWARD
OF BENEFITS - 28

As discussed above, the Court finds that the ALJ provided legally insufficient reasons to discount both medical testimony and plaintiff's testimony. In particular, the ALJ failed to provide substantial evidence of any reasons to discount evidence of plaintiff's mental limitations due to his depression. If plaintiff's testimony and the opinions of Dr. Cheng, Dr. Calvert, Dr. Goudey, and Mr. Norman were credited as true, the testimony of the vocational expert was clear that plaintiff would not be able to perform his past work or any other work at step five of the sequential evaluation. *Supra* II.C, D, E; AR 1712-26. The ALJ would be required to find plaintiff disabled on remand, making remand of this case unnecessary. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007) ("[W]e will not remand for further proceedings where, taking the claimant's testimony as true, the ALJ would clearly be required to award benefits.");

The Court also considered the length of time plaintiff has been waiting for a final disposition. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Plaintiff filed his application for SSI in in 2010 and has been waiting a decade for a final decision on his claims. AR 25; *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand).

Accordingly, remand for an award of benefits is the appropriate remedy.

1

<u>CONCLUSION</u>

2

      Based on the foregoing discussion, the Court finds the ALJ erred when he/she

3

determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore

4

is REVERSED and this matter is REMANDED for award of benefits.

5

6

      Dated this 31st day of March, 2021.

7

8

9

Theresa L. Fricke
United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25